**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0295, In the Matter of Marianne Carvell and Ronald Carvell, the court on April 7, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. See Sup. Ct. R. 18(1). We vacate and remand.

The respondent, Ronald Carvell, appeals an order by the Circuit Court (Moore, J.) denying various motions by him and granting a motion for contempt on behalf of the petitioner, Marianne Carvell, now known as Marianne Vines, finding him in contempt and ordering him to pay the petitioner attorney's fees and other sanctions. On appeal, the respondent raises ten issues, including arguments that: (1) various of the trial court's findings are not supported by the record; and (2) various of the trial court's sanctions constitute unsustainable exercises of discretion. Based upon our review of the record, it appears that at least some of the trial court's findings are not supported.

For example, the trial court found that "the Respondent had other assets he could have used to make payment against [his portion of the student] loans, such as . . . bonuses." However, at least twice, the trial court upheld the respondent's objections to questions regarding his receipt of bonuses. The only evidence regarding putative bonuses was the petitioner's testimony that the respondent did not receive bonuses during the marriage, but was to receive them at his new job after the divorce. The petitioner's attorney conceded "maybe there aren't bonuses, but my client believes that there are." The record does not contain any evidence of the amount of any such bonuses.

The trial court granted the petitioner's finding of fact that the respondent "submitted at [the] hearing no evidence to support [his] allegations" that "the Department of Education does not offer federal funds to . . . repay a loan in someone else's name." However, the trial court admitted, as an exhibit, a letter from the Department of Education that stated that it "does not offer federal funds to repay a portion of a loan or to repay a loan in someone else's name."

The trial court found that the respondent "did not cooperate with, or sign the [Qualified Domestic Relations Order (QDRO)] documents as required in . . . Section 10 of the parties' February 10, 2011 Permanent Stipulations" (emphasis in original). However, the stipulation does not refer to the preparation or execution of QDROs. It was the April 9, 2012 order that directed the parties to

"cooperate fully" in the preparation and execution of the QDROs, but directed the petitioner to prepare them. The record supports that the petitioner took approximately three months to prepare the QDROs. Both the petitioner and the respondent testified that she provided him with the first QDRO on July 20, 2012, and the second on August 14, 2012. Although the second QDRO apparently did not require the respondent's signature, the record does not establish that he was informed of this until he received it. The respondent testified, and the petitioner did not contest, that he signed and returned the QDROs to her on August 24, 2012.

The petitioner argues that the respondent "refused to sign the required documents until [she] provided personal information that was not required by the plan administrators." Although the record shows that the respondent requested and moved that the QDROs be held in escrow pending his receipt of account information from the petitioner, we conclude that this issue is distinct from the issue of his cooperation with signing the QDROs as required by the April 9 order. Furthermore, the petitioner testified that she filed the QDROs with the trial court on September 4, 2012, approximately two weeks after she provided the respondent with the second QDRO.

The trial court made "a specific finding that the Respondent failed to turn over in a timely manner to Petitioner's counsel liquidated funds that were the subject of the QDRO and the Court's Order, despite the fact that the Court's [April 9, 2012] Order . . . was clear and unambiguous." The April 9 order directed the respondent to withdraw the QDRO funds "within 10 days of the establishment of retirement accounts for him by the plan administrator and within five (5) days thereafter place these funds" with the petitioner's counsel as escrow agent. The respondent testified, and the petitioner did not contest his testimony at the hearing, that he received the first QDRO check on December 19, 2012, and the second QDRO check on January 14, 2013, and transferred the funds to the petitioner's attorney within two days of his receipt of the second check. The record does not establish when or whether the plan administrators established retirement accounts for the respondent as contemplated in the April 9 order. Therefore, it does not show that the respondent violated the specific terms of the April 9 order.

The trial court made "a specific finding that the Respondent's failure to turn over the liquidated QDRO funds delayed the payment of the debts" that the April 9 order directed to be paid with those funds. However, the petitioner's attorney represented to the trial court that she was not ordered to make partial payments from escrow and that to do so would have created extra work for her. As a result, the record does not establish that the respondent's decision to transfer the QDRO checks to the petitioner's counsel together, rather than separately, delayed the payment of the debts or injured the petitioner.

2

Furthermore, the trial court's order contains internal inconsistencies. For example, the order directs the respondent to "pay off his share of the Sallie Mae Consolidated Student Loan debt of the parties in the amount of $32,512.00, plus any interest accumulated thereon, within 30 days of the effective date of this Order" and requires him "to pay a penalty of $100 per day" to the petitioner, to be applied to the loan, if he fails to do so. However, elsewhere it requires him to pay $200 per month on the loan "until the balance due on said loan is paid off."

Because the issues involved in the respondent's motions, the petitioner's motion for contempt, and the trial court's sanctions, including the award of attorney's fees, are inextricably intertwined, the unsupported findings and inconsistencies cast doubt upon the sustainability of the entire order. As a result, we vacate the order in its entirety and remand for determination of all post-divorce motions that were the subject of the order. In light of this order, we need not address the respondent's arguments regarding the trial court's calculation of attorney's fees in its order of May 20, 2014. Because we have vacated the trial court's award of attorney's fees, its calculation of fees is likewise vacated.

<u>Vacated and remanded</u>.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**